

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-2007

# Victaulic Co v. Tieman

Precedential or Non-Precedential: Precedential

Docket No. 07-2088

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Victaulic Co v. Tieman" (2007). *2007 Decisions.* Paper 491.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/491

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2088

VICTAULIC COMPANY,

v.

JOSEPH L. TIEMAN;
TYCO FIRE PRODUCTS, LP

(E.D.P.A. Civil No. 06-cv-05601)

JOSEPH L. TIEMAN;
TYCO FIRE PRODUCTS, LP

v.

VICTAULIC COMPANY

(E.D.P.A. Civil No. 07-cv-00512)

Victaulic Company,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 07-cv-00512)
District Judge: Honorable Stewart Dalzell

Argued July 11, 2007

Before: RENDELL, AMBRO and
NYGAARD, <u>Circuit Judges</u>

(Opinion filed :  August 23, 2007)

Oldrich Foucek, III, Esquire (Argued)
Kelly M. Smith, Esquire
Tallman, Hudders & Sorrentino
1611 Pond Road
The Paragon Centre, Suite 300
Allentown, PA 18104

　　　Counsel for Appellant

Stephen G. Harvey, Esquire
Cara M. Kearney, Esquire
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA   19103

Edward L. Friedman, Esquire (Argued)
Scott K. Davidson, Esquire
Christopher Dove, Esquire
Locke, Liddell & Sapp
600 Travis Street
3400 JP Morgan Chase Tower
Houston, TX   77002

     Counsel for Appellees

---

## OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

This is a classic case of jumping the gun.  The dispute centers on a covenant not to compete between an employer and former employee.  All parties admit that the employee is violating the covenant; the question is whether it is unreasonable, and thus not appropriately enforced through an injunction.  Because reasonableness is a fact-intensive inquiry, we hold that it should not have been determined on the pleadings.  After resolving that we have jurisdiction over the interlocutory dismissal of claims related to the covenant because it effectively denied a request for a preliminary injunction, we vacate the District Court's order and remand for further proceedings.

3

## I. Facts and Procedural History

Victaulic Company manufactures valves, couplings, sprinkler heads, and other mechanical devices for use in a variety of industries, one of which is fire protection. Joseph Tieman worked as a sales representative for Victaulic from April 1998 until December 2006. He primarily worked in Ohio, West Virginia, and western Pennsylvania, but, according to Victaulic, he had relationships with Victaulic customers throughout the United States. He also trained new sales representatives in various states, thus becoming familiar with the company's customers outside his three-state focus area.

As a condition of his employment, Tieman signed a covenant not to compete with Victaulic. In relevant part, he agreed that upon leaving Victaulic he would not sell or distribute the types of items regularly sold (or contemplated for sale) by Victaulic for 12 months (1) within a ten-state Restricted Victaulic Sales Region, or (2) in any area in which Victaulic products are sold on behalf of nine named competitors (of which Tyco is one). He further agreed (3) not to solicit any past or present Victaulic customer on behalf of any business in competition with it.[1]

---

[1] Section 4 of the non-compete agreement states, in relevant part:

    b)    I [Tieman] further agree that[,] for twelve (12) months following the date of termination of my

employment with [Victaulic] . . . , I will not, within any [ten-state] Victaulic Restricted Sales Region, engage either directly or indirectly in the sale or distribution of the types of items or products regularly sold, offered for sale, or contemplated for sale by [Victaulic] as an employee, consultant or independent contractor of any business in competition with [Victaulic]. For purposes of this paragraph, a Restricted Victaulic Sales Region shall mean any sales region in which I had or shared a sales territory or any sales region in which I had responsibility or significant involvement during the three year period prior to my termination of employment.

c)      I further agree that[,] for twelve (12) months following the date of termination of my employment with [Victaulic] . . . , I will not, within any geographic region in which Victaulic products are sold (which includes all of the continental United States, Canada & Mexico), engage either directly or indirectly in the sale or distribution of the types of items or products regularly sold, offered for sale, or contemplated for sale by [Victaulic] as an employee, consultant or independent contractor for or on behalf of any of the following businesses: Tyco International Ltd.; Star Pipe Products; Anvil International Inc.; Shurjoint Piping Products Inc.; Modgal Metal Ltd.; Viking Corporation & Viking SA; Mueller Indistries, Inc.; Viega International; The Reliable Automatic Sprinkler Co., Inc.; and any and all of their subsidiaries, affiliates, or successors.

d)      I further agree that[,] for twelve (12) months following the date of termination of my employment with

Upon leaving Victaulic, Tieman immediately began working as a sales representative for Tyco, selling the same kinds of products he sold for Victaulic. Tieman alleges (and Victaulic appears to admit) that he does not sell Tyco products in his former three-state focus area, but he does sell within the ten-state Restricted Victaulic Sales Region.

Tieman and Tyco filed a declaratory judgment action against Victaulic in December 2006 in the Southern District of Ohio seeking a declaration that the covenant not to compete was invalid under Pennsylvania law. Victaulic counterclaimed against both for breach of contract, misappropriation of trade secrets, tortious interference with contractual relations, and unfair competition. It also filed its own substantially identical suit in the Eastern District of Pennsylvania. The Ohio District Court transferred its case to Pennsylvania's Eastern District, and the two cases were consolidated.

At the time of consolidation, two motions were pending: (1) Victaulic's request for a preliminary injunction, and (2) Tyco and Tieman's motion to dismiss for failure to state a claim. The District Court granted the motion to dismiss on the breach of contract, tortious interference, and unfair competition claims.

---

[Victaulic] . . . , [I will not] contact or solicit any past or present [Victaulic] customers on behalf of any business in competition with [it].

App. at A71.

6

In so doing, it ruled that the covenant not to compete was invalid because it was unreasonable as a matter of law. Because the dismissed claims were premised on the agreement's validity, none could survive this ruling. The Court reserved judgment on the trade secrets claim, asking the parties for supplemental briefing. Because the Court stayed its actions when Victaulic appealed, the motion to dismiss that count is still pending.

## II.     Appellate Jurisdiction

Victaulic argues that we have jurisdiction under 28 U.S.C. § 1292(a)(1), which provides for appellate review of interlocutory orders "refusing . . . injunctions." Here, the District Court did not explicitly deny an injunction, but Victaulic argues that the dismissal of four counts of the complaint effectively denied Victaulic's requests for preliminary (and permanent) injunctions related to those claims.

An order that has the "practical effect of refusing an injunction" can be appealable under § 1292(a)(1). *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). But "the mere fact that injunctive relief is requested and is therefore encompassed within the ruling made by the court on other grounds does not transform the ruling into one denying an injunction." *Shirey v. Bensalem Twp.*, 663 F.2d 472, 477 (3d Cir. 1981). Rather, § 1292(a)(1) covers situations in which "the requested injunction was the predominant relief sought." *Id.* at 478. By moving for a preliminary injunction, Victaulic demonstrated that one of its

chief goals was to end Tieman's (admitted) violation of the covenant not to compete.  Thus, the dismissal had the practical effect of refusing an injunction.

Even so, an interlocutory appeal only lies if the District Court's order has "'serious, perhaps irreparable, consequence[s],' and . . . the order can be 'effectually challenged' only by immediate appeal." *Carson*, 450 U.S. at 84 (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)).  We have interpreted *Carson* as establishing a two-pronged test for determining whether an order such as this is appealable: it must (1) have serious consequences, and (2) immediate appeal must be the only means of effective challenge. *See Ross v. Zavarella*, 916 F.2d 898, 902 (3d Cir. 1990).

Our opinions in this area have not been careful to distinguish *Carson*'s "serious consequences" and "effective challenge" prongs.  Nevertheless, it appears that urgency is the touchstone of the former.  When the appellee's actions are not causing any continuing harm, we generally have held that this prong is not met; when they are, we have held the opposite. *Compare United States v. RMI Co.*, 661 F.2d 279, 282 (3d Cir. 1981) (disclaiming jurisdiction when no continuing harm), *with Rolo v. Gen. Dev. Corp., GDV*, 949 F.2d 695, 703 (3d Cir. 1991) (exercising jurisdiction when appellee was allegedly liquidating assets to render itself judgment-proof).  We have written that whether the appellant moved for a preliminary injunction is evidence of the case's urgency. *See United States v. Wade*, 713

8

F.2d 49, 53 (3d Cir. 1983); *Shirey*, 663 F.2d at 476; *see also Samayoa v. Chicago Bd. of Educ.*, 783 F.2d 102, 104 (7th Cir. 1986). In addition, we have denied one request for appellate review on the ground that while the appellant was suffering continuing harm, it was too minimal to meet the "serious consequences" prong. *Ross*, 916 F.2d at 902 (disclaiming jurisdiction when appellant, a state-court judge challenging her transfer to a different subject-matter division, suffered no diminution in status or pay (merely the inconvenience of a different docket) during the pendency of the litigation).

In our case, Tieman continues to work for Tyco in a position substantially similar to the one he held at Victaulic (selling the same kinds of equipment). Victaulic alleges that his employment is harming it, and we must accept that allegation as true at this stage of the litigation. Adding to the urgency is that seven months have elapsed since Tieman began working for Tyco, utterly frustrating the purpose of the covenant: to keep Tieman from competing with Victaulic for one year. Moreover, this is an appeal from the (implicit) denial of the preliminary injunction, which, we have held, is the primary purpose of § 1292(a)(1). *Shirey*, 663 F.2d at 476. The efficacy of any remedy is likely declining as time passes, so we have little trouble concluding that Tieman's conduct is causing Victaulic a serious injury.[2]

_____

[2] We note that the section 5 of the covenant contains a provision that tolls the one-year non-competition period during

9

The "effective challenge" prong deals with whether the appellant can get substantially similar relief without an immediate appeal. Here, the relief requested was a preliminary injunction enforcing the covenant not to compete. Tyco and Tieman argues that Victaulic asked for a preliminary injunction on the basis of all of its claims, including the trade secrets claim that has not been dismissed. Thus, they argue, Victaulic may yet receive similar relief if that request is granted.

We disagree. The language of Victaulic's motion is telling. It asked that Tieman be enjoined:

> (1) for a period of twelve (12) months following the date of termination of his employment with Victaulic, [from] engag[ing] . . . in the sale or distribution of the type of items or products regularly sold . . . by [Victaulic] within any Restricted Victaulic Sales region or any geographic region in which Victaulic products are sold, as an employee . . . of Tyco . . . .

the time of breach. App. at A72. While this might mitigate some of the harm that Tieman is causing, it is more likely a deterrent measure (which obviously failed here). The fact remains that Tieman is currently working for Victaulic's competitor in violation of the covenant. Moreover, it is likely that Tieman can do the most damage now—while he is still most familiar with Victaulic's business.

10

(2)     for a period of twelve (12) months
following the date of termination of his
employment from Victaulic, [from]
contact[ing] or solicit[ing] any past or
present customer of [Victaulic] on behalf
of Tyco . . . .

App. at A77. This language is all but lifted from the covenant
not to compete, *see* App. at A71, which supports Victaulic's
claim that enforcement of the covenant (and not preliminary
relief on the trade secrets claim) was its only aim in seeking
preliminary injunctive relief. In addition, in its briefing before
the District Court on likelihood of success, Victaulic argued that
its covenant was enforceable. *Id*. at A84–89. In so doing, it set
out the key elements of the claim—that the covenant was
incident to an employment relationship, protected legitimate
interests, and was reasonable in scope—and explained how it
intended to prove each one. *Id.* It did not set out the elements
of a trade secrets claim (or any other). We acknowledge that its
briefing did reference trade secrets, but it did so as one of three
legitimate interests that the covenant allegedly protected. *Id*. at
A85–86. Thus we conclude that Victaulic did not request a
preliminary injunction on its trade secrets claim, so the District
Court's dismissal of the covenant claims left it with no means of
receiving preliminary relief.

Even if we believed that Victaulic requested a
preliminary injunction on its trade secrets claim, we would find

11

jurisdiction here. As noted, Tyco and Tieman argue that we should not because an injunction based on the trade secrets claim could provide the same relief as one of the covenant claims. In effect, they maintain that because similar relief is hypothetically possible, the "effective challenge" prong is not met. Again, we disagree. We acknowledge that we have held that orders are not appealable when the district court's ruling does not effectively narrow the scope of the requested injunction. *Plantamura v. Cippola*, 617 F.2d 344, 347 (3d Cir. 1980). *Plantamura* was a claim against a New Jersey police department and various officials for sex discrimination in hiring. The District Court granted partial summary judgment in favor of all defendants but the police department because those defendants were not named in the plaintiff's Equal Employment Opportunity Commission complaint. We dismissed the appeal because obtaining an injunction against the police department was "the heart of Plantamura's claim." *Id.* We reasoned that an injunction against it alone "would provide the full relief sought." *Id.*

We expressly distinguished *Plantamura* from *Build of Buffalo, Inc. v. Sedita*, 441 F.2d 284, 287 (2d Cir. 1971), in which the Second Circuit Court of Appeals held that it had jurisdiction because the District Court's dismissal of a key defendant effectively narrowed the scope of injunctive relief available. In that case, the plaintiffs alleged that the Buffalo Police Department was systematically discriminating against

12

them and violating various constitutional rights.[3] The District Court dismissed a number of defendants, including the police commissioner, leaving only a handful of individual officers as proper defendants. The plaintiffs appealed the dismissal, arguing that because they sought to enjoin the police department from engaging in a pattern of abuse, injunctions against a few individual officers would do them little good. The Court agreed: "[e]ven if injunctive relief were eventually awarded against each of the named individual police defendants, it would not at all satisfy plaintiffs' claim for relief from systematic misbehavior at levels of authority higher than that of a patrolman on the beat." *Id.* Therefore, the Court held that it had jurisdiction to hear the appeal.

We agree that something like Victaulic's requested relief (preventing Tieman from selling similar products for Tyco for a year) *could* fit a trade secrets claim, as it is possible for a court to enjoin an employee working in the relevant industry or soliciting customers for some period of time. *Air Prods. & Chems., Inc. v. Johnson*, 442 A.2d 1114, 1123 (Pa. 1982). But such a wide-ranging injunction is atypical; rather, the usual injunction merely prevents the employee from disclosing

---

[3] The underlying claim in *Build of Buffalo* was, to say the least, odd. As the majority put it, the plaintiffs alleged "systematic or purposeful police abuse distributed over many years and apparently not directed at a particularly identifiable class of persons." *Build of Buffalo*, 441 F.2d at 289.

specified trade secrets. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 44 cmt. d (1995) ("An injunction ordinarily prohibits only use or disclosure of the trade secret and information substantially derived from the trade secret."). Under Pennsylvania law, a broader injunction only lies when it is "virtually impossible . . . [for the employee] to perform his . . . duties for [his new employer] without in effect giving [it] the benefit of [his] confidential information." *Air Prods.*, 442 A.2d at 1123 (quoting *Emery Indus. v. Cottier*, 202 U.S.P.Q. 830, 835 (S.D. Ohio 1978)).

Because Victaulic has not alleged or argued inevitable disclosure, the real result of the District Court's dismissal of the covenant claims is to limit the scope of injunctive relief available under the facts pled. Thus, this case is similar to *Build of Buffalo*, 441 F.2d at 287, insofar as the District Court has effectively denied the relief that is at the heart of Victaulic's claims. As in that case, appellate jurisdiction exists here.

## III. Merits

We review a dismissal for failure to state a claim *de novo*. To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007) (internal citations omitted).

14

Here, Victaulic has alleged that it and Tieman entered into a covenant not to compete, which Tieman is now breaching at Tyco's behest by working for it in a substantially similar position. Tyco and Tieman do not deny this; rather, they argue that the breach is permissible because the covenant is too unreasonable to be enforced. Unreasonableness is an affirmative defense on which Tyoc and Tieman bear the burden of proof. *WellSpan Health v. Bayliss*, 869 A.2d 990, 999 (Pa. Super. Ct. 2005).

"Generally speaking, we will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6). A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however."[4] *In re Tower Air*, 416 F.3d 229, 238 (3d Cir. 2005) (internal citations omitted). In trying to show that unreasonableness is clear from the face of the complaint, Tyco and Tieman bear a particularly heavy burden, as "the determination of reasonableness is a factual one, requiring

---

[4] We cannot construe Tyco and Tieman's motion as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) because the pleadings are not closed. *See* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1367 (3d ed. 1998). Tyco and Tieman have not answered Victaulic's complaint in the Pennsylvania action, nor have they answered Victaulic's counterclaims in the Ohio action. Instead, they moved for dismissal.

consideration of all the facts and circumstances." *WellSpan*, 869 A.2d at 999.

Under Pennsylvania law, mandating compliance with a covenant not to compete is disfavored; it is, however, appropriate where the covenant is "incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Hess v. Gebhard Co. & Inc.*, 808 A.2d 912, 917 (Pa. 2002).[5]

To be reasonably necessary for the protection of the employer, a covenant must be tailored to protect legitimate interests. "Generally, interests that can be protected through covenants include trade secrets, confidential information, good will, and unique or extraordinary skills." *Id.* at 920. Similarly,

---

[5] Like any other contract, Pennsylvania courts will enforce an unreasonable covenant at law (*i.e.*, through money damages) unless it is unconscionable or otherwise defective. *See Krauss v. M.L. Claster & Sons, Inc.*, 254 A.2d 1, 5 (Pa. 1969); *accord Boyce v. Smith-Edwards-Dunlap Co.*, 580 A.2d 1382, 1386 (Pa. Super. Ct. 1990). As the Distirict Court did not find Tieman's covenant unconscionable, we are unclear why it dismissed Victaulic's entire breach of contract claim (which included a request for money damages). But, as the issue is not raised here, we leave it for the parties and District Court to sort out on remand.

16

not allowing competitors to profit from an employer's "specialized training and skills" is a legitimate use of a covenant. *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 631 (Pa. 1957). Here, Victaulic claims that the covenant protects its interests in (1) the specialized skills and training it invested in Tieman over a period of eight years, (2) its trade secrets (though it gives little indication of their nature), and (3) its goodwill.

Tyco and Tieman respond, however, that the covenant is broader than necessary to protect these interests. In particular, they claim that its prohibitions on selling "the types of products regularly sold, offered for sale, or contemplated for sale by [Victaulic]," and on "contact[ing] or solicit[ing] any past or present customer on behalf of any [competitor]," are overbroad. In addition, they argue that it is not reasonably limited in geographic scope. We deal with each of their objections in turn.

## A. Product-Type Restriction

Sections 4(b) and (c) of the covenant prevent Tieman from selling "the types of items or products regularly sold, offered for sale, or contemplated for sale by [Victaulic]." App. at A71. Tyco and Tieman allege that Tieman was only familiar with one of Victaulic's product lines, namely, products designed for the fire protection industry. Victaulic, according to Tyco and Tieman, manufactures a wide variety of other product lines for use in other industries. Preventing Tieman from selling

17

similar products in those other industries is unreasonable, they argue, because he learned nothing about those products or industries from Victaulic.

The District Judge agreed, ruling that "Victaulic fail[ed] to explain, and [I] do not see, why it is reasonable to prohibit Tieman from working in industries unrelated to fire protection." App. at A15. This statement has two problems. First, it appears to misplace the burden of proof. It is Tyco and Tieman's responsibility to prove unreasonableness, not Victaulic's to prove reasonableness. *WellSpan*, 869 A.2d at 999. Moreover, we are not at a stage in which Tyco and Tieman's proof may be considered. Second, on the pleadings, one can envision scenarios in which the restriction is reasonable. We do not know anything of substance about Victaulic's product lines. Even if we accept—which we cannot at this stage—that Tieman's job was limited to a small subset of Victaulic's products, we do not know how similar the various product lines are, how transferable knowledge of one product line is to the others, or whether there is substantial overlap in customers. Moreover, we know virtually nothing about the goodwill, trade secrets, and specialized training that Victaulic is seeking to protect, or how those things might be of use in other industries that also use Victaulic piping systems. These are but a few of the relevant factual gaps, but they are sufficient to illustrate that it is premature to make a judgment about the reasonableness of the product-type restriction because of the little we know from the pleadings.

18

Of particular concern is that the District Court used the website at http://www.victaulic.com to establish certain facts about Victaulic's business. While it is proper for a court to take judicial notice of facts not reasonably subject to dispute, FED. R. EVID. 201(b), several concerns come into play here. First, we require that evidence be authenticated before it can be admitted. *Id.* 901(a). Thus we allow judicial notice only from sources not reasonably subject to dispute. *Id.* 201(b). Anyone may purchase an internet address, and so, without proceeding to discovery or some other means of authentication, it is premature to assume that a webpage is owned by a company merely because its trade name appears in the uniform resource locator. *Cf. United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000) (holding that information from the internet must be properly authenticated to be admitted); *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 782–83 (C.D. Cal. 2004) ("Printouts from a web site do not bear the indicia of reliability demanded for other self-authenticating documents under FED. R. EVID. 902. To be authenticated, some statement or affidavit from someone with knowledge is required . . . .").

Second, a company's website is a marketing tool. Often, marketing material is full of imprecise puffery that no one should take at face value. *Cf. Catrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (distinguishing between mere puffery and actual misrepresentations). Thus courts should be wary of finding judicially noticeable facts amongst all the fluff; private corporate websites, particularly when describing their

own business, generally are not the sorts of "sources whose accuracy cannot reasonably be questioned," FED. R. EVID. 201(b), that our judicial notice rule contemplates.

We also note that the District Court employed judicial notice at an early stage in this litigation and outside the context of an evidentiary proceeding. While the rules allow a court to take judicial notice at any stage of the proceedings, FED. R. EVID. 201(f), we believe that it should be done sparingly at the pleadings stage. Only in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point. Resolving a thorny issue like reasonableness by resorting to a party's unauthenticated marketing material falls far short of the bar.

Moreover, having taken judicial notice of the nature of Victaulic's business, the District Court used this to infer that Tieman's training, specialized knowledge, and trade secrets—in short, all of the things that the covenant not to compete legitimately protects—are not transferrable among industries the company serves. Taking a bare "fact" that is reflected not in the pleadings, but on a corporate website, and then drawing inferences *against* the non-moving party so as to dismiss its well-pleaded claims on the basis of an affirmative defense, takes us, as a matter of process, far too far afield from the adversarial context of litigation.

**B.     Customer Restriction**

Tyco and Tieman argue, and the District Court ruled, that the customer restriction in Section 4(d) is overbroad because it is not limited to customers that Tieman worked with during his tenure at Victaulic. Even if we accept Tyco and Tieman's broad reading of the restriction, we cannot determine on the pleadings that it is unreasonable. It may be, for example, that Tieman has specialized knowledge of Victaulic's pricing structure and marketing techniques that he could use to woo away its customers, or access to other protectable customer-specific information. Moreover, we know little about the extent of Tieman's contacts, relative to the total number of Victaulic customers. Again, we emphasize that reasonableness under Pennsylvania law is a fact-intensive inquiry; indeed, "[a] restrictive covenant found to be reasonable in one case may be unreasonable in others." *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 734 (Pa. Super. Ct. 1994). Moreover, though still disfavored, Pennsylvania courts recognize that "covenants have developed into important business tools to 'allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them.'" *Hess*, 808 A.2d at 159 (quoting *Miller Mech., Inc. v. Ruth*, 300 So.2d 11, 12 (Fla. 1974)). At this stage, Victaulic has asserted a legitimate interest in protecting its customer relationships. *See Thermo-Guard, Inc. v. Cochran*, 596 A.2d 188, 194 (Pa. Super. Ct. 1991). Whether the covenant reasonably protects that interest is not a question that can be resolved on the pleadings.

21

## C. Geographic Limitation

Tyco and Tieman also contend that the covenant is not "reasonably limited in . . . geographical extent," *Hess*, 808 A.2d at 917, because section 4(c) prevents Tieman from selling certain products for nine named competitors (one of which is Tyco) anywhere Victaulic products are sold. Once again we cannot reach this conclusion on the pleadings. In this Information Age, a *per se* rule against broad geographic restrictions would seem hopelessly antiquated, and, indeed, Pennsylvania courts (and federal district courts applying Pennsylvania law) have found broad geographic restrictions reasonable so long as they are roughly consonant with the scope of the employee's duties. *See, e.g.*, *Volunteer Fireman's Ins. Servs., Inc. v. CIGNA Prop. & Cas. Ins. Agency*, 693 A.2d 1330, 1338 (Pa. Super. Ct. 1997); *Nat'l Bus. Servs. v. Wright*, 2 F. Supp. 701, 708 (E.D. Pa. 1998); *Graphic Mgmt. Assocs. v. Hatt*, No. 97 Civ. 6961, 1998 WL 159035, at *14 (E.D. Pa. Mar. 18, 1998) (Van Antwerpen, J.); *Kramer v. Robec, Inc.*, 824 F. Supp. 508, 512 (E.D. Pa. 1992). Here, we do not know from the pleadings where Victaulic sells products.[6] Victaulic has alleged

---

[6] The District Court took judicial notice of the fact that Victaulic sells products everywhere in the world because it claims on its website to be a "global" company. In addition to the problems with taking judicial notice of this "fact," *see* Part III.A, *supra*, the word "global" in a company's marketing material (where puffery is the norm) needs more context. Among other deficiencies, it certainly gives no useful indication

that Tieman developed relationships with customers across North America. From this, it is possible that the geographic scope of the covenant is reasonable.

Moreover, the District Court should have considered the geographic element of section 4(c) in the context of the overall restriction. That section only prevents Tieman from working for nine named competitors—presumably businesses that, like Victaulic, are large-scale suppliers of the same kinds of products. These competitors might be able to use a former Victaulic employee's specialized knowledge of Victaulic's product lines and sales strategies anywhere in the world that the two compete. *See Insulation Corp. of Am.*, 667 A.2d at 734 ("An employee may receive specialized training and skills, and learn the carefully guarded methods of doing business which are the trade secrets of a particular enterprise. To prevent an employee from utilizing such training and information in competition with his former employer, for the patronage of the public at large, restrictive covenants are entered into."). In addition, if Victaulic gave Tieman some sort of specialized training, it would be legitimate for it to prevent him from using that training for the benefit of its primary competitors anywhere they compete. *Id.* Thus, the District Court should not have concluded at this stage that the geographic scope of section 4(c) was unreasonable.

---

of exactly where Victaulic products are actually sold for comparison against the scope of Tieman's work.

## IV.  Conclusion

Whether a covenant not to compete is unreasonable is a holistic inquiry, particularly when the covenant is detailed and nuanced.  It requires balancing the employer's need to protect its investment and disclosures against the employee's need to earn a living in his chosen field and the public interest, and then determining whether the covenant comes reasonably close to that balance.  *Hess*, 808 A.2d at 917.  At the pleadings stage, a court rarely knows enough about the substance of this balancing act to make a judgment as to whether the covenant is reasonable.[7]

Having determined that we have appellate jurisdiction under 28 U.S.C. § 1292(a)(1), we vacate the District Court's order dismissing Victaulic's claims, reinstate its complaint and motion for a preliminary injunction, and remand for further proceedings.

---

[7] In the alternative, Victaulic argues that District Court should have attempted to "blue pencil" (*i.e.*, amend) the covenant to make it reasonable.  Though we agree that, absent bad faith, Pennsylvania courts do attempt to blue pencil covenants before refusing enforcement altogether, *see Sidco Paper Co. v. Aaron*, 351 A.2d 250, 254–57 (Pa. 1976), we need not decide whether blue pencilling would be appropriate here, as it was improper for the District Court to conclude at this stage that the covenant is unreasonable as written.