NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2950
_____

FLORENCIO VAZQUEZ,
                              Appellant

v.

CITY OF ALLENTOWN;
ANDREW HOLVECK;
MAURICE FLOWERS-WILLIAMS;
MATTHEW DIEHL
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 5-14-cv-05891)
District Judge: Honorable Edward G. Smith
_____

Submitted under Third Circuit L.A.R. 34.1(a):
September 16, 2016
_____

Before: CHAGARES, GREENAWAY, JR., and RESTREPO, *Circuit Judges.*

(Opinion Filed:  May 9, 2017)
_____

OPINION*
_____

GREENAWAY, JR., *Circuit Judge*:

_____

    *This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiff-Appellant Florencio Vazquez appeals several District Court rulings denying the admission of certain evidence at trial and also appeals the District Court's grant of Defendants' Rule 50 motion for judgment as a matter of law. We conclude that the District Court properly exercised its discretion in excluding the evidence. We also conclude that the District Court properly granted Defendants' motion for judgment as a matter of law. Thus, we will affirm.

## I.  Background

This § 1983 suit arises out of Vazquez's allegations of excessive force against the City of Allentown and three Allentown police officers (collectively "Defendants"). The relevant portions of Vazquez's complaint are as follows: while Vazquez was "lawfully sitting on the front stairs of a business," (Compl. ¶ 6) Allentown officer Andrew Holvek "leaped toward [him], grabbed [his] arm, and forcefully removed [his] hand from [his] pocket." (Compl. ¶ 10.) Then, Holvek "forcefully pull[ed] [him] down the steps," at which point Holvek and "several other City of Allentown police officers . . . beat [him] with their fists over a period of several minutes." (Compl. ¶ 12.) The incident caused "severe injuries to [Vazquez's] face and body." (*Id.*) The Complaint alleged one count of excessive force and a *Monell* claim.[1]

---

[1] Vazquez withdrew his *Monell* claim before trial. He also dismissed his claims against the City of Allentown.

2

After unsuccessful attempts at settlement, the parties prepared for trial. In their pre-trial memoranda, both Vazquez and Defendants listed the three defendant police officers as potential witnesses. Trial began on August 3, 2015. Of relevance here, during proceedings on this date, Defendants requested that Vazquez be precluded from testifying during his case-in-chief because he failed to appear on time and remain at his properly noticed deposition. The Court declined to impose this as a sanction. Vazquez's counsel, Richard J. Orloski, first expressed unwillingness to preclude Vazquez from testifying but later agreed because Defendants apparently agreed to stipulate to the admission of photographs depicting Vazquez's injuries. The exchange is as follows:

> [Defendants]: I would ask that the Plaintiff, as a result of Friday's failure to appear and testify, that he be precluded from testifying during his case-in-chief. . . .
> THE COURT: Well, . . . I'm not inclined to grant that sanction. But[,] Mr. Orloski, what is your position with respect to [this] request?
> [Orloski]: I need to authenticate the photographs. By authenticating the photographs I think I could try the case without him, but I don't want to be committed to it at this point 'cause I don't know—are [Defendants] going to agree to the photographs coming in?
> ….
> [Defendants]: I believe we've stipulated to the photographs.
> ….
> [Orloski]: Okay, and now—well, if I get that in, I'm 99 percent sure I wouldn't call him . . . .
> ….
> THE COURT: . . . . So if the defense will stipulate to the admissibility of the pictures, the Plaintiff will stipulate that they are precluded from calling Mr. Vazquez in their case-in-chief?
> [Orloski]: That I—that we won't call him?
> THE COURT: Right?

3

[Orloski]: Yeah, I think we can live with that, Your Honor.

App. 87a–89a.

On August 4, 2015, Defendants filed a motion styled "Trial Brief Re: Compelled Attendance." D. Ct. Docket No. 65. In the motion, Defendants stated: "Plaintiff's counsel never served any subpoena to compel Defendants to attend trial, and made no attempt to communicate with Defendants' counsel in order to secure Defendants' appearance." Defs' Trial Br. at 1. The upshot of Defendants' motion was that under the Local Rules of Civil Procedure, because they were not subpoenaed, trial could not be delayed due to their absence, and Defendants were not required to appear.

Presentation of evidence began on August 4, 2015. Vazquez's case-in-chief appeared to rely on presentation of the following evidence: the testimony of Defendants; video footage of the incident; screenshots of the video footage; and photographs purporting to depict his injuries. As explained above, Vazquez and Defendants stipulated to the admission of the photographs taken of Vazquez that showed Vazquez's injuries.

But Vazquez had difficulties presenting the rest of the evidence. For one, the police officers did not appear at trial and Vazquez had not subpoenaed them. Vazquez requested a stay of the proceedings in order to secure the attendance of the police officers. The District Court denied this request because Defendants had not been subpoenaed. Further, the video footage and screenshots were not authenticated, and Vazquez failed to present any witnesses to provide authentication.

Despite these issues, trial continued. Upon Vazquez's request, and over

4

Defendants' "strong objection," App. 166a, the District Court allowed Vazquez to admit designated portions of Defendants' depositions in lieu of their in-court testimony. The District Court also allowed Vazquez to present video footage of the incident, on the basis that it did not need to be authenticated because Defendants had produced the footage during discovery. The District Court confessed that allowing the admission of the footage was a "close call," and that he did so "with great hesitation," App. 123a, relying on "case law from the 9th Circuit and the 5th Circuit that seem[ed] to permit the document to be authenticated as a result of representations made by the Defense and the fact that it was provided by the Defense." *Id.* However, the District Court refused to admit the screenshots from the video.

After the presentation of evidence, Defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which the District Court granted. The District Court reversed its prior decision to admit the video into evidence, stating "I do believe that my original ruling is not in accordance with Third Circuit precedent." App. 220a. Having denied the admission of all of Vazquez's evidence except the deposition excerpts and the photographs showing Vazquez's injuries, the trial court concluded that Vazquez had insufficient evidence to prove excessive force.

Vazquez now appeals. He asserts various challenges to the trial court's decision to deny the admission of the evidence. These challenges are in service of his larger assertion that the District Court erroneously granted judgment as a matter of law. We review his arguments below.

5

## II. Standard of Review[2]

Our review of a judgment as a matter of law under Federal Rule of Civil Procedure 50(a) is plenary, and we must apply the same standard as the District Court. *Brownstein v. Lindsay*, 742 F.3d 55, 63 (3d Cir. 2014) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)); *Beck*, 89 F.3d at 971. A Rule 50(a) motion for judgment as a matter of law should be granted only if, "viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Id.* (quoting *Beck*, 89 F.3d at 971).

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Green*, 617 F.3d 233, 251 (3d Cir. 2010). "[W]e require that evidence be authenticated before it can be admitted." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) (citing Fed. R. Evid. 901(a)). To authenticate, a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

---

[2] The District Court had jurisdiction under 18 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### III. Analysis

#### 1. Evidentiary Claims

Vazquez's first argument is that the District Court abused its discretion in refusing to stay the trial to allow him to locate Defendants and secure their appearance at trial. This argument relies on Vazquez's interpretation of the Eastern District of Pennsylvania Local Rules of Civil Procedure, which preclude delay of trial where a witness is not present unless the witness is subpoenaed or if "it is shown that the witness or witnesses were in attendance at the time and departed without leave." E.D. Pa. R. Civ. P. 45.1; 43.1.1. Vazquez believes that these rules are inapplicable because they apply to "witnesses, not parties," and Defendants are parties. Appellant's Br. 19. Thus, Vazquez maintains, "[i]n the interest of justice . . . the trial court ought to have compelled the appearance of the three Defendants." *Id.* at 20.

The plain terms of Local Rule 45.1 contradict Vazquez's theory that the Court would have been able to permit a stay. Under Local Rule 45.1, "[n]o trial shall be continued on account of the absence of any witness unless a subpoena for the attendance of such a witness has been served at least seven (7) days prior to the date set for trial." E.D. Pa. R. Civ. P. 45.1. In other words, the District Court was squarely prohibited from granting Vazquez the continuance he desired. And, while Defendants are parties, they are also witnesses. *Witness*, Black's Law Dictionary (10th ed. 2014) (defining witness as "[s]omeone who sees, knows, or vouches for something."). Thus, the District Court did

7

not abuse its discretion in refusing to delay trial.

Vazquez launches an alternative argument regarding Defendants' failure to appear: he argues that because Defendants did not appear, the trial court was permitted to include an "adverse inference" charge in its jury instructions. We disagree. While we have stated that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them," *Rad Servs., Inc. v. Aetna Cas. & Sur. Co*., 808 F.2d 271, 274 (3d Cir. 1986) (internal quotation marks omitted), we have not gone so far as to construe this principle to apply to parties who did not "refuse to testify" but rather did not appear at trial and were not subpoenaed. The District Court told Vazquez: "because [Defendants] were available by subpoena, they're not absent. If you had subpoenaed them and they weren't here, that might be a different story." App. 219a. There was no controlling authority requiring the Court to apply an adverse inference, and the Court's decision to reject application of the inference was reasonable given that Defendants were not subpoenaed. We find no abuse of discretion.[3]

Next, Vazquez challenges the District Court's refusal to admit into evidence video footage of the incident. As noted above, the District Court first allowed the video to be admitted "with great hesitation," relying on "case law from the 9th Circuit and the 5th

---

[3] Further, it is problematic for Vazquez to now demand this charge for at least two reasons: one, Vazquez failed to remain at a scheduled deposition and the Court did not apply the charge in that instance and two, the Court, in an apparent effort to provide a remedy to Vazquez given Defendants' failure to appear, took the unorthodox approach of allowing admission of portions of Defendants' depositions.

Circuit that seems to permit the document to be authenticated as a result of representations made by the Defense and the fact that it was provided by the Defense." App. 123a. However, the District Court later reversed this decision, stating "I do believe that my original ruling is not in accordance with Third Circuit precedent." App. 220a. The Court also concluded that the footage could not otherwise be authenticated because Vazquez did not prove that the individuals in the video were in fact the defendant police officers.

Vazquez opines that the Court's subsequent ruling was in error because authenticity turns on whether "the evidence is what it claims to be." Appellant's Br. 22. Vazquez is correct that authentication serves the function of proving that evidence is what the proponent claims it is; however, a proponent must follow "appropriate methods of authentication." *See United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013). For example, a proponent can provide "[t]estimony of a [w]itness with [k]nowledge . . . that an item is what it is claimed to be," or "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(1), (9). Here, Vazquez could have provided testimony of Defendants to show that they were in fact the individuals depicted in the video, or provided testimony of the person who created the video. He did not, nor did he follow any other appropriate methods of authentication. The District Court's decision to preclude admission of the video footage was not an abuse of discretion given Vazquez's presentation of virtually no testimony in support of authentication.

9

Vazquez argues in the alternative that, despite his failure to authenticate, "[w]here Defendants produced the video as part of discovery, they cannot object to its authenticity." Appellant's Br. 22. Although we have stated that documentary evidence "produced by [a party] in answer to an explicit discovery request . . . while not dispositive on the issue of authentication, is surely probative," *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 929 (3d Cir. 1985), it does not follow that everything produced in discovery is unconditionally authenticated. We agree with the District Court that to adopt so broad a rule would "put counsel in a position of . . . hav[ing] to be careful [about] what [is] provide[d] in discovery for fear it's going to be interpreted as an admission that . . . [it] is relevant and probative on a fact." App. 197a. The District Court reasonably concluded that Vazquez's inability to elicit testimony identifying Defendants in the video militated against authentication, notwithstanding the fact that the Defendants produced the video in discovery.

Next, Vazquez takes issue with the District Court's refusal to admit the screenshots of the video. Vazquez argues that these stills were "twice authenticated: 1) by coming directly from the video which was now in evidence; and 2) the photographs were identified by the deponents." Appellant's Br. 26.

Vazquez's first point misses the mark—the District Court's decision to not admit the screenshots was based on Vazquez's failure to show that the screenshots *came from*

10

the video.[4] The statements in his Opening Brief and to the District Court that the stills

"c[ame] from the video" are insufficient to prove this for authentication purposes.

Vazquez's second point also does not indicate an abuse of discretion. Although

Vazquez confronted Defendants with the screenshots during their deposition, the District

Court found relevant that Defendants were not asked to identify themselves in the

screenshots, and that the screenshots were referred to as "exhibits," creating confusion as

to the particular items involved. In other words, the District Court concluded that

Vazquez put forth no "*competent* evidence to support authentication." *See Turner*, 718

F.3d at 232 (emphasis added). The Court summed up its concerns, stating that in order to

admit the evidence without any additional facts tending to support authentication it

"would have to ask the jury to make a determination that these were slide shots that were

taken from the video because nobody else would have told the jury that." App. 208–09.

Far from an abuse of discretion, this conclusion was a sound assessment of the

difficulties underlying Vazquez's failure to competently prove that the screenshots were

---

[4] Orloski told the court during an off-the-record discussion that his secretary created the screenshots by taking them from the video. Orloski's secretary did not testify. Thus, because he did not personally take the images from the video his statements that they came from the video cannot provide authentication.

Vazquez also appears to argue that the screenshots can be self-authenticated because they came from the video footage, and the video footage was already in evidence when he presented the screenshots. He also points out that the timestamp on the screenshots are the same as the time indicated in the video footage. While this is circumstantial evidence that could be probative of authenticity, the District Court found significant the fact that Vazquez presented no witness to testify as to who created the screenshots. We do not believe that this was an abuse of discretion—without testimony as to the method of creation, there is simply no proof that the shots came from the video footage and also no evidence that the timestamps themselves were authentic.

taken from the video.

Thus we conclude that the Court did not abuse its discretion regarding the evidence relating to the use of force. We next consider whether the competent items of evidence allowed Vazquez to survive Defendants' motion for judgment as a matter of law.

## 2. Rule 50(a) Judgment as a Matter of Law

The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In assessing claims of excessive force, the court considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 205.

In granting judgment as a matter of law, the District Court observed that it only considered such a motion in the "rarest of circumstances." App. 220a. It ultimately held that this was the "rare case[]" for which judgment as a matter of law was proper, explaining that "there is simply nothing that sufficiently places these three Defendants on that video or on the date and time in question." App. 221a. It further explained that even if the video had been admitted into evidence, there was "simply [in]sufficient evidence whereby this jury would have legally sufficient evidentiary basis to find in favor of the Plaintiff." *Id.*

Given that we conclude that the District Court did not abuse its discretion in

requiring authentication in compliance with the Federal and Local Rules of Civil Procedure, there is little evidence in support of Vazquez's excessive force claim as it relates to the force used. Essentially, Vazquez's evidence on the use of force was limited to the excerpts of the deposition that were read into evidence and the photographs of his injuries. We thus consider whether this evidence sufficiently creates a "question of material fact" that makes judgment as a matter of law improper. *Lindsay*, 742 F.3d at 63.

The deposition excerpts established the following with regard to the force used: 1) Officer Matthew Allen Diehl at one point laid on top of Vazquez and "had [his] knee on top of him," App. 176a; 2) Officer Andrew Richard Holvek pulled Vazquez's hand to take him off the stoop because he "didn't know what he was reaching for," and thought that Vazquez might be armed, App. 181a; and 3) that Officer Holvek twice "used a diffused pressure strike to his lower back," App. 181a, which he did because "[Vazquez] was still tensed up. He was still struggling with us." App. 183a.

Critically, the depositions revealed precious little about Vazquez's behavior when he was approached, and it is the totality of the circumstances that guides an excessive force inquiry. *See Saucier*, 533 U.S. at 208. In order for the jury to find for Vazquez, it would have to conclude that the totality of the circumstances was such that it was unreasonable for Defendants to take the action that they did—i.e., it would have to speculate that Vazquez posed no immediate threat, was not actively resisting arrest, or, as the District Court noted, that the incident stemmed from "an unlawful arrest." App. 187a. There was nothing in the record that would have allowed them to do this, however, and to

13

the contrary, Defendants' deposition testimony indicated that Vazquez acted "aggressively" and continued to struggle while officers attempted to apprehend him.

The photographs of Vazquez's injuries also failed to support his excessive force claim. The parties stipulated to the photographs and that they were taken within a week after the encounter. In the light most favorable to Vazquez, the photographs would allow the jury to find that the injuries resulted from force used during the encounter, but they do not establish that the force was excessive. The photographs, by themselves, only demonstrated that Vazquez was injured after the encounter; they showed nothing about whether Defendants' actions during their interaction with Vazquez were unreasonable. As such, without further evidence, the photographs would not have allowed a jury to find that Vazquez's injuries resulted from Defendants' alleged use of excessive force.

In sum, the evidence admitted was minimal and much of it was unfavorable to Vazquez. And Vazquez, due to the agreement forged with Defendants, was unable to take the stand to tell his side of the story. Further, as the District Court reasonably precluded admission of the video and screenshots there was no objective basis on which to assess the incident. Thus, there was no "legally sufficient" ground for the jury to find for Vazquez. Defendants were entitled to judgment as a matter of law.

### IV. Conclusion

We are troubled by what appears to be plaintiff's counsel's serious lack of preparation in this very important case—section 1983 is an invaluable device in aiding citizens who have suffered abuse from the state. Unfortunately, there is simply no basis

for us to conclude that the District Court abused its discretion with regard to central pieces of evidence, and similarly no basis for us to reverse its grant of judgment as a matter of law.  Thus, and for the foregoing reasons, we will affirm the judgment of the District Court.