**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2931
_____

MAQBOOL PARACHA; LUBNA PARACHA,
Appellants

v.

DARLING INGREDIENTS INC.; SIEMENS CORP.; ABC CORPORATIONS 1-3
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-20-cv-04902)
District Judge: Honorable Esther Salas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 31, 2024

Before: HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Opinion filed: December 6, 2024)

_____

OPINION*

_____

---
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

Plaintiff Maqbool Paracha suffered severe injuries in a workplace accident. Following the accident, Paracha and his spouse brought a state-law negligence action against his employer, Darling Ingredients, Inc. ("Darling"). New Jersey's Workers' Compensation Act ("WCA") governs Paracha's employment relationship with Darling and strictly limits the Parachas' ability to sue except in certain limited circumstances. Because those circumstances were not present, the District Court dismissed the suit for failure to state a claim. We will affirm that order.

## I[1]

This case arises from an incident at a Darling plant in New Jersey on April 20, 2018. On that date, Paracha was working at the plant as an assistant plant manager (a position he had held with the company since 1991).

Paracha's duties included overseeing the maintenance and operation of two high-pressure condenser fans that had been in use at Darling since 1977. The temperature-controlled fans are on the roof and have blades that are eight feet long. To prevent the condenser system from overheating, the fans automatically turn on when a condenser reaches sixty-five degrees Fahrenheit.

Over the years, Paracha and other employees complained to Darling that the fans' age and condition posed safety risks. One of their safety complaints related to Darling's decision to modify the fans by disengaging their disconnect switches. A fan's disconnect

---

[1] We recount the facts as alleged in the operative complaint.

switch is a safety feature that protects against accidental start-up during service or inspection. When disconnect switches fail, they are time consuming and expensive to replace. So instead of replacing faulty disconnect switches, Darling directed its employees to circumvent them by creating electrical bypasses. The electrical bypasses allowed the fans to run without interruption, thereby increasing Darling's production and profit.

Employees at the plant used a two-step "Lock Out/Tag Out" procedure to deenergize a fan before doing maintenance work on it. App. 57. The employee doing the maintenance work waited on the roof with the fan while a second employee in the control room deenergized the fan using Darling's computer system. After the employee in the control room confirmed that the fan was deenergized, the employee on the roof engaged the disconnect switch and locked the fan.

On the date of the incident, Paracha went to the roof to locate a leak in a condenser. An employee in the control room notified him by radio that the fan was deenergized, and Paracha saw that the fan blades had stopped. Paracha then engaged the disconnect switch and locked the fan before looking for the leak. While he was working on the condenser, the fan reenergized and struck him. This incident caused Paracha severe and permanent injuries, including amputation and partial amputation of several fingers. After the incident, the Occupational Safety and Health Administration ("OSHA") cited Darling for a violation.

Paracha and his spouse sued Darling for damages in New Jersey state court. Darling removed the matter to federal court, and moved to dismiss the suit for failure to

3

state a claim. The company argued that New Jersey's WCA barred the suit. The District Court agreed and dismissed the claims. The Parachas timely appealed.

## II[2]

We exercise de novo review of a district court's dismissal for failure to state a claim. *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). We "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quotation marks and citation omitted). "However, we disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Id*. To withstand a motion to dismiss, a plaintiff "must allege facts that raise a right to relief above the speculative level." *Victaulic*, 499 F.3d at 234 (cleaned up).

## III

When the New Jersey legislature enacted the WCA, it made that "statutory workers' compensation remedy its preferred mechanism for providing compensation to injured workers."[3] *Van Dunk v. Reckson Assocs. Realty Corp.*, 45 A.3d 965, 966 (N.J. 2012). "In exchange for immunity from liability, the [WCA] requires the employer to provide swift and certain payment, without regard to fault, to employees for workplace

---

[2] The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[3] New Jersey substantive law governs this action. *See Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

4

injuries." *Id.* at 971. "The [WCA]'s remedy is exclusive, except for injuries that result from an employer's 'intentional wrong'; for those, an injured employee is permitted to maintain a common-law tort action against the employer." *Id.* at 966 (quoting N.J. Stat. Ann. § 34:15-8).

An intentional wrong must amount to "a substantial certainty that injury or death will result." *Id.* Assessing intentional wrong involves a two-prong analysis. *Id.* at 972. First, courts consider the "conduct prong" by "examining the employer's conduct in the setting of the particular case." *Id.* "Mere knowledge by an employer that a workplace is dangerous" does not suffice for the conduct prong. *Id.* at 978. Neither does reckless conduct. *Id.* at 972, 978. It is not enough that "a known risk later blossoms into reality. We must demand a virtual certainty." *Id.* at 978. Second, courts address the "context prong" by "considering whether the resulting injury or disease, and the circumstances in which it is inflicted on the worker, may fairly be viewed as a fact of life of industrial employment, or whether it is plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [WCA]." *Id.* at 972 (cleaned up). The substantial-certainty standard is met only if both prongs are satisfied. *Laidlow v. Hariton Mach. Co.*, 790 A.2d 884, 892 (N.J. 2002).

We accept as true that Darling disabled the disconnect switches on the fans, had received prior complaints about the fans' safety, and was cited for an OSHA violation after Paracha's incident. But the New Jersey Supreme Court has "declined to issue a per se rule that removal of safety devices or OSHA violations equate to intentional wrongs." *Van Dunk*, 45 A.3d at 973. Instead, courts must examine the particular facts of a case.

5

*Id.* For instance, in *Mull v. Zeta Consumer Products*, the New Jersey Supreme Court permitted a tort action to proceed where the defendant had disabled safety mechanisms, the disabled safety mechanisms had caused a prior accident and injury, and the defendant failed to provide a Lock Out/Tag Out procedure. 823 A.2d 782, 783–84, 786 (N.J. 2003).

Here, the Parachas pleaded insufficient facts upon which a jury could find an intentional wrong. That is because Darling had another safety mechanism in place—the computer system in the control room—that was designed to deenergize the fans notwithstanding the disabled bypass switches. The Parachas' complaint makes only conclusory statements that using only the computer system in the control room was inadequate to deenergize the fans and was virtually certain to result in injury or death. Therefore, they have not satisfied the conduct prong of the substantial-certainty standard.

\* \* \*

For the foregoing reasons, we will affirm the District Court's order dismissing the complaint.