**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2772
_____

MELHA BATTOU, U.S. Citizen*; LOUIZA BATTOU, Sisters;
NANCY A. SELZER; FREDI LOPEZ, Husband; CHRISTIAN TENA QUINTERO;
ALBERTO TENA GARCIA, U.S. Citizen Son and Father; ESMERALDA LUCERO;
PETRA ROSALES MORAN, U.S. Citizen Daughter and Mother;
LEODAN GOBEA OTERO; HIGENIA OTERO FLORES;
SIPRIANO GOBEA, U.S. Citizen Son, Mother and Father,

Appellants

v.

SECRETARY UNITED STATES DEPARTMENT OF STATE;
JOHN DOES 1-200, in their official capacity as the consular officials
responsible for issuing immigrant visas;
DEPARTMENT OF STATE

*Amended pursuant to the Clerk Order dated September 17, 2019
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-03370)
District Judge: Honorable Esther Salas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 30, 2020

Before: CHAGRES, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: April 29, 2020)

_____

OPINION[*]

_____

BIBAS, *Circuit Judge*.

In a system that forbids advisory opinions, federal courts are not in the business of predicting the future. A group of U.S. citizens and their noncitizen relatives ask us to declare that a federal immigration law making certain aliens inadmissible does not apply to the relatives. But whether they will ever be subject to the law depends on the outcome of contingent events. Because their claims are not yet ripe, the District Court properly dismissed their complaint for lack of subject-matter jurisdiction. We will affirm.

## I. BACKGROUND

### A. The visa-application process for relatives of U.S. citizens

This case is about the process that relatives of U.S. citizens must go through if they want a U.S. visa. Imagine that a U.S. citizen wants to sponsor a visa for her father, a native of Italy. The daughter must first file a Petition for Alien Relative on behalf of her father. *See* U.S. Citizenship & Immigration Servs., DHS, Instructions for Form I-130, Petition for Alien Relative, and Form I-130A, Supplemental Information for Spouse Beneficiary 1 (Feb. 13, 2019), https://www.uscis.gov/sites/default/files/files/form/i-130instr.pdf. If the Government approves the petition, her father can then apply for a U.S. visa. *Id.* at 6.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

The process for the father depends on his status and location. If he lives abroad (say in Italy), he must schedule an in-person interview at a U.S. embassy or consulate there to complete his application. If the father already lives in the United States on some temporary legal basis, he can apply to adjust his status to lawful permanent resident without leaving the United States for an interview. *See* 8 U.S.C. § 1255(a). But if he lives here illegally, he typically does not have that option. *See id.* § 1255(a), (c). Instead, he must return to Italy for an in-person interview.

Doing so would not be as easy as buying a round-trip flight. Under the statutory unlawful-presence provision, aliens who leave the country after living here unlawfully for one year or more become inadmissible for the next ten years. 8 U.S.C. § 1182(a)(9)(B)(i)(II). If they were here for less than one year but more than 180 days, they become inadmissible for the next three years. *Id.* § 1182(a)(9)(B)(i)(I). Once labeled inadmissible, an alien becomes ineligible for a visa. *Id.* § 1182(a).

So aliens who are here illegally for more than 180 days and want a visa find themselves in a bind: They need an in-person interview, which must take place in their home country. But if they leave the United States, they become inadmissible and thus ineligible for a visa for three or ten years.

Nor can aliens bypass the three- or ten-year ban by leaving voluntarily before they are ordered removed. The three-year ban expressly applies to aliens who leave "voluntarily." 8 U.S.C. § 1182(a)(9)(B)(i)(I). And though the ten-year-ban does not specify the type of departure it covers, the State Department's *Foreign Affairs Manual* says that the ban applies "whether the alien departed on his or her own initiative or under removal order."

3

9 U.S. Dep't of State, *Foreign Affairs Manual* § 302.11-3(B)(2)(c) (hereinafter *Foreign Affairs Manual*).

## B. Facts

Appellants are a group of U.S. citizens and their noncitizen relatives who have lived here illegally for more than one year. The U.S. citizens filed petitions to get visas for their relatives. All their petitions were approved, meaning that the relatives have the green light to apply for visas.

But none of the relatives has done so. They expect that if they leave the country for a visa interview, they will be banned from reentering for ten years. So instead, they pursued other options. Five asked for (or plan to ask for) relief from removal in their pending (or upcoming) removal proceedings, including asylum, cancellation of removal, or relief under the Convention Against Torture. The sixth relative, Fredi Lopez Romero, "will be in removal hearings shortly" to pursue cancellation of removal or relief under the Convention. App. 22. (The seventh relative, Artemisa Yasmin Lozano Romero, is no longer a party to this appeal.)

## C. Procedural history

While the removal proceedings were pending or about to begin, appellants filed a putative class action, claiming that the ten-year ban should not apply to illegal aliens who leave because of a removal order. They framed their claim as an Administrative Procedure Act challenge to the *Foreign Affairs Manual*. Specifically, they alleged that the *Manual* misinterprets the unlawful-presence provision, 8 U.S.C. § 1182(a)(9)(B)(i)(II), by applying the ten-year ban to aliens who are ordered removed. They asked the District Court to enjoin

the Government from denying their hypothetical visa applications under the ten-year ban. They also asked the court to declare 9 *Foreign Affairs Manual* § 302.11-3(B)(2)(c) void.

The Government moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. On jurisdiction, it argued that there was no final agency action to review and that the claims were not yet ripe. The District Court agreed that there was no final agency action to review, as appellants had not alleged that the Government had applied or even considered applying the *Manual* to them. So it dismissed for lack of subject-matter jurisdiction. In doing so, it also suggested that the claims could be unripe.

We review a dismissal for lack of subject-matter jurisdiction de novo. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). And we can affirm on any ground supported by the record. *Hughes v. Long*, 242 F.3d 121, 122 n.1 (3d Cir. 2001). Because the Government makes a factual (not just legal) attack on subject-matter jurisdiction, we may look beyond the complaint and consider the Government's supporting affidavits. *Davis*, 824 F.3d at 346.

## II. APPELLANTS' CLAIMS ARE NOT RIPE

We need not decide whether the *Manual* itself is a final agency action, as we find a more glaring jurisdictional flaw. As the Government correctly notes, it is possible that none of the relatives will ever be subject to the ten-year ban. So appellants' claims are not ripe.

Federal courts lack jurisdiction to hear unripe claims. *Armstrong World Indus., Inc. ex rel. Wolfson v. Adams*, 961 F.2d 405, 410–11 (3d Cir. 1992). A claim is not ripe unless deciding it "would amount to more than an advisory opinion based upon a hypothetical set of facts." *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994) (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649

5

(3d Cir. 1990)). When a plaintiff's alleged injury depends on a contingency, the parties' interests are typically not adverse enough to amount to an Article III case or controversy. *Armstrong World Indus.*, 961 F.2d at 411–12.

Appellants ask us to declare that the ten-year ban does not apply to illegal aliens who leave the country under a removal order. But it is possible that none of the relatives will ever be subject to the ban. All of the relatives are pursuing (or are about to pursue) relief from removal. If that relief is granted, the relatives could abandon their visa applications and avoid the interviews in their home countries, thus sidestepping the ten-year ban.

To be sure, even a "threat of future action[ ]" can sometimes create a ripe controversy. *Armstrong World Indus.*, 961 F.2d at 412. In those cases, the plaintiff must show that the chance that the future event will occur is "substantial" and immediate enough to justify declaratory relief. *Id.* (quoting *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir. 1990)). Appellants have not met this burden. They do not allege that the relatives are likely to be removed. Without those allegations, all we have is a *possibility* that the Government could deny their visa applications based on the ten-year ban. That is not enough.

* * * * *

The ripeness doctrine bars courts from opining on theoretical disputes. Appellants seek either an injunction against denying the relatives' hypothetical visa applications under the ten-year ban or a declaration that the ban does not apply to aliens who are ordered removed. But depending on the outcome of their removal proceedings, the relatives may never be

subject to the ban. So their claims are not yet ripe and we will affirm the District Court's dismissal.