NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3272
_____

JANE JONES, fictitious name

v.

PI KAPPA ALPHA INTERNATIONAL FRATERNITY, INC.; BRETT HELBERG, Pi
Kappa Alpha Fraternity Member, in his individual and official capacity; DAVID
MALINOWSKI, Pi Kappa Alpha Fraternity Member, in his individual and official
capacity; PI KAPPA ALPHA LOCAL CHAPTER MU ZETA RAMAPO COLLEGE;
SKENDER AGIC, Pi Kappa Alpha Fraternity/Mu Zeta Chapter President, in his
individual and official capacity; JOHN HOGAN, Pi Kappa Alpha/Mu Zeta Member and
Sergeant at Arms in his official and individual capacity; JOSHUA WILLIAM
NEWMAN, Pi Kappa Alpha Fraternity/Mu Zeta Chapter Member, in his individual and
official capacity; RAMAPO COLLEGE OF NEW JERSEY; RAMAPO COLLEGE
BOARD OF TRUSTEES; VINCENT MARKOWSKI, Ramapo College of New Jersey
Public Safety Director, in his individual and official capacity; PETER MERCER,
Ramapo College of New Jersey President, in his individual and official capacity; CORY
ROSENKRANZ, Ramapo College of New Jersey Coordinator of Substance Abuse &
Prevention, in her individual and official capacity; MELISSA VAN DER WALL,
Ramapo College of New Jersey Acting Dean of Students; JORDYN MASSOOD, former
Ramapo College of New Jersey Student; JUSTIN SOMMERS, former Ramapo College
of New Jersey Student; JOHN/JANE DOES #1-20 individually and in their official
capacity; XYZ CORPORATIONS #1-10 individually, jointly, and severally and in the
alternative; CHRISTOPHER RAINONE, former Ramapo College of New Jersey Student

Ramapo College of New Jersey; Ramapo College Board of Trustees; Vincent
Markowski; Peter Mercer; Cory Rosenkranz; Melissa Van Der Wall,
                                                              Appellants
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-16-cv-07720)
District Judge: Honorable Kevin McNulty
_____

Argued January 8, 2019

Before: AMBRO, KRAUSE, and FUENTES, Circuit Judges

(Opinion filed April 1, 2019)

Gurbir S. Grewal
        Attorney General of New Jersey
Melissa Raksa
        Assistant Attorney General
Benkamin H. Zieman
        Deputy Attorney General
Christopher J. Riggs          [Argued]
Office of Attorney General of New Jersey
Division of Law Tort Litigation and Judiciary
25 Market Street
P.O. Box 116
Trenton, NJ 08625

        *Counsel for Appellants*


Patrick J. Whalen          [Argued]
109 South Warren Street
P.O. Box 23653
Trenton, NJ 08608

        *Counsel for Appellee*

---

OPINION[*]

---

FUENTES, Circuit Judge

In this appeal under 42 U.S.C. § 1983, defendant-appellants Ramapo College and

several of its officers—its Board of Trustees, President, Acting Dean of Students and

former Title IX Coordinator, Public Safety Director, and Coordinator of Substance Abuse

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

and Prevention (the "officers")—appeal the District Court's denial of their Motion to Dismiss. In their Motion, Ramapo and the officers sought to dismiss, *inter alia*, plaintiff-appellee Jane Jones's claims for deliberate indifference and a state-created danger in Counts VII and VIII of her Complaint, respectively. On appeal, Ramapo and the officers in their official capacities argue they are entitled to sovereign immunity as an arm of the state. The officers also argue in their individual capacities that they are entitled to qualified immunity, either because Jones has failed to sufficiently allege a state-created danger or because it was no longer clearly established following the Supreme Court decision *Ashcroft v. Iqbal*[1] that supervisors could be liable for violations of the Fourteenth Amendment by their subordinates.

We conclude that Ramapo and the officers in their official capacities are entitled to sovereign immunity under our decision in *Maliandi v. Montclair State University*.[2] Thus, we reverse the District Court's denial of the Motion to Dismiss with respect to Counts VII and VIII against Ramapo and the officers in their official capacities. Further, we hold that Jones has failed to sufficiently plead a state-created danger and the officers are thus entitled to qualified immunity with respect to Count VIII. However, we affirm the District Court's denial of the Motion with respect to Count VII against the officers in their individual capacities because they have waived the issue.

---

[1] 556 U.S. 662 (2009).
[2] 845 F.3d 77 (3d Cir. 2016).

## I.     Background

The allegations in Jones's Complaint may be summarized as follows[3]:

### A.     Jones's Sexual Assault and Rape

The suit arises from the sexual assault and rape of plaintiff-appellee Jane Jones—who filed this case under a pseudonym—at a fraternity party on the campus of Ramapo College. The party was held in one of the fraternity member's student apartments. Upon her arrival at the party, Jones was served drinks by a fraternity pledge known as "C.L." until she was "completely inebriated."[4] C.L. then "lured" Jones into the apartment bedroom, where he and another man played "Rock, Paper, Scissors" in order to "determine who would get to sexually assault and rape" her.[5] C.L. then sexually assaulted Jones. When other fraternity members became aware of the assault, they expelled Jones and C.L. from the party together. Jones's shoes, underwear, jacket, and school identification were all left in the apartment.

C.L. then drove Jones across campus to a freshmen dormitory, passing Ramapo security checkpoints en route. Two residents of the dormitory, Christopher Rainone and Justin Sommers, let C.L. and Jones into the dormitory and accompanied C.L. and Jones to their room. There, C.L. and yet another man again assaulted and raped Jones while Rainone, Sommers, and a fifth student, Jordyn Massood, kept watch and videotaped the

---

[3] As noted below, we must, while reviewing a ruling on a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), view the facts in the light most favorable to the plaintiff. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017); *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

[4] A37.

[5] *Id.*

incident. Because of her rape and the physical and psychological harm caused by it, Jones was unable to continue her studies at Ramapo and later left the institution.

**B.     Proceedings in the District Court**

Jones filed suit in the District Court against, *inter alia*, Ramapo and its officers. Of the seventeen counts in her Complaint under 42 U.S.C. § 1983, Title IX,[6] and state law, two against Ramapo and its officers are relevant here: Count VII for "deliberate indifference" and Count VIII for a "state-created danger," both under § 1983. Jones alleges that various "Public Safety and Security employees" of Ramapo, named in the Complaint as Doe defendants, "had the opportunity to intervene and stop" her assault and rape.[7]

Ramapo and its officers moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Ramapo and its officers in their official capacities were an arm of the state entitled to sovereign immunity and that the officers in their individual capacities were entitled to qualified immunity. The District Court denied the Motion to Dismiss, and Ramapo and its officers appealed.

---

[6] 20 U.S.C. §§ 1681-88.
[7] A41.

5

## II.    Standard of Review[8]

We review denial of a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction *de novo*.[9]  Although Rule 12(b)(1) permits both facial and factual challenges to a court's jurisdiction,[10] only a facial attack is presented here.  A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"[11]  In a facial attack, the court applies the same standard as under Rule 12(b)(6).[12]

We review denial of a motion to dismiss under Rule 12(b)(6) on the basis of qualified immunity *de novo*.[13]  When conducting our review, "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the

---

[8] Jones alleges that the District Court had subject-matter jurisdiction over her federal claims under 28 U.S.C. § 1331 and over her state claims under § 1367.  We have jurisdiction to review the District Court's denial of Ramapo and the officers' Motion to Dismiss pursuant to the collateral order doctrine.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993); *Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014).

[9] *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001) (citing *Lavia v. Pa. Dept. of Corr.*, 224 F.3d 190, 194-95 (3d Cir. 2000).

[10] *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

[11] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

[12] *Horizon Healthcare Servs.*, 846 F.3d at 633.

[13] *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012)) ("We exercise de novo review of a district court's denial of a motion to dismiss on qualified immunity grounds as it involves a pure question of law.").

plaintiff."[14]  However, "we are not compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation."[15]

## III.    Discussion

On appeal, Ramapo and its officers raise two arguments: (1) Ramapo and its officers in their official capacities are an arm of the state entitled to sovereign immunity, and (2) the officers in their individual capacities are entitled to qualified immunity because (a) the state-created danger doctrine is inapplicable to merely passive state conduct or, in the alternative, (b) it is no longer clearly established after the decision *Ashcroft v. Iqbal*[16] that supervisory liability may be imposed "in the context of a Fourteenth Amendment state-created danger claim."[17]  Because Ramapo and its officers are arms of the state entitled to sovereign immunity and Jones has failed to sufficiently plead a state-created danger, we reverse in part and remand for further proceedings.

### A.    Ramapo and Its Officers in Their Official Capacities Are an Arm of the State Entitled to Sovereign Immunity

First, Ramapo and its officers in their official capacities argue that they are an arm of the state.  States and "governmental entities that are considered 'arms of the State'" are immune to suit in federal court.[18]  An entity may be deemed an "arm of the state" under the balancing test of three co-equal factors that we articulated in *Fitchik v. New Jersey*

---

[14] *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[15] *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks omitted) (internal citation omitted).

[16] 556 U.S. 662 (2009).

[17] Appellant Br. at 47-48.

[18] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).

7

*Transit Rail Operations, Inc.*[19]:  (1) "whether the state treasury is legally responsible for an adverse judgment" against the entity (the "funding factor"), (2) "whether the entity is treated as an arm of the State under state case law and statutes" (the "status factor"), and (3) "whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control" (the "autonomy factor").[20]

Ramapo argues that it is an arm of the state under our decision in *Maliandi v. Montclair State University.*[21]  We agree.  In *Maliandi*, we applied the *Fitchik* factors to Montclair State University and concluded that, although the funding factor weighed against finding that Montclair was an arm of the state, it was outweighed by the status and autonomy factors.[22]  Because Ramapo is a New Jersey state college governed by the same statutes that governed Montclair, we are compelled by *Maliandi* to conclude that Ramapo is an arm of the state under the *Fitchik* factors.  We turn to those factors now.

First, the funding factor weighs against finding that Ramapo is an arm of the state, due to our decision in *Maliandi*.[23]  In *Maliandi*, we noted that, under New Jersey law, the state was legally liable for judgments against Montclair only under the New Jersey Tort Claims Act[24] and the New Jersey Contractual Liability Act.[25]  Similarly, the fact that only 18.8 to 21.8 percent of Montclair's funding came from the state weighed against

---

[19] 873 F.2d 655, 659 (3d Cir. 1989).

[20] *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citing *Fitchik*, 873 F.2d at 659).

[21] 845 F.3d 77.

[22] *Id.* at 86.  Montclair was a state college at the time *Maliandi* was decided.

[23] 845 F.3d 77 (3d Cir. 2016).  Although Ramapo concedes that the funding factor weighs against it, the issue is resolvable on a motion to dismiss, so we will address it.

[24] N.J. Stat. Ann. §§ 18A:3B-6(h), 59:1-1 to :12-3.

[25] *Id.* §§ 59:13-1 to -10.

8

immunity.[26]  However, the state had expressly immunized itself from Montclair's liabilities only in certain, limited cases.[27]  On the whole, these considerations "tip[ped] decisively" in favor of finding that Montclair was not an arm of the state.[28]  We reach the same conclusion with respect to Ramapo, as it is subject to the same laws regarding funding as Montclair when *Maliandi* was decided,[29] and Ramapo's state funding makes up only 27.9 percent of its budget.[30]

Second, under *Maliandi*, Ramapo's status under state law weighs in favor of finding that Ramapo is an arm of the state.  The *Maliandi* Court concluded that although Montclair's legal authorization to own land in its own name weighed against treating it as an arm of the state,[31] four other considerations tipped the other direction.  First, New Jersey law did not generally grant state colleges like Montclair the right to sue and be sued, but instead allowed them to be represented by the state Attorney General.[32]  Second, Montclair was immune from paying state taxes.[33]  Third, Montclair was authorized by state law to exercise eminent domain, a prerogative normally reserved for

---

[26] *Maliandi*, 845 F.3d at 88-89 ("[A]lternative sources of funding—even where only a small part of the entity's overall budget—counsel against immunity.").  In *Maliandi*, we took judicial notice of Montclair's budget reports as public documents.  *Id.* at 89 n.10.

[27] *Id.* at 90.

[28] *Id.* at 91.

[29] *See* N.J. Stat. Ann. §§ 18A:3B-6(h), :64-6(k), (t), 59:1-1 to :12-3, :13-1 to -10.

[30] Ramapo College of New Jersey, Budget Report 2018-2019 (June 25, 2018), https://www.ramapo.edu/budget/files/2018/08/FY19-Budget-Book.pdf.  As in *Maliandi*, we take judicial notice of Ramapo's financial documents as "public documents." *Maliandi*, 845 F.3d at 89 n.10.

[31] *Maliandi*, 845 F.3d at 96 (citing N.J. Stat. Ann. § 18A:64-6(k), (q)).

[32] *Id.* at 94 (citing N.J. Stat. Ann. §§ 18A:3B-6(h), :64-6(k)).

[33] *Maliandi*, 845 F.3d at 95.

arms of the state.[34] Fourth, Montclair was generally required to comply with New Jersey's administrative procedure and civil service laws.[35] The same analysis applies to Ramapo, as it is subject to the same statutory regime as Montclair, which has not been substantively amended since *Maliandi*.[36] Thus, *Maliandi* compels the conclusion that Ramapo's status under state law weighs in favor of finding that it is an arm of the state.

Third, Ramapo's limited autonomy from the state also weighs in favor of concluding that Ramapo is an arm of the state, compelled again by the decision in *Maliandi*. In *Maliandi*, we concluded that, although state law guaranteed Montclair "institutional autonomy"[37] and its trustees could only be removed by the Governor for cause,[38] the trustees were all appointed by the governor,[39] who was statutorily designated as the "employer" of all Montclair employees, vesting him with the "sole power to collectively bargain on their behalf."[40] Similarly, the Secretary of Higher Education was vested with the authority to issue various rules governing Montclair, including "regulations relating to licensure, outside employment, tuition, personnel, tenure, and

---

[34] *Id.* (citing N.J. Stat. Ann. § 18A:64-6(*l*)).

[35] *Id.* (citing N.J. Stat. Ann. §§ 18A:3B-6(f), :64-6(i)). Three other considerations were inconclusive: state law placed Montclair within the Department of State but guaranteed it "institutional autonomy," authorized it to enter into contracts, but subject to state-imposed limits, and permitted Montclair to separately incorporate, which it never did. *Id.* at 91-96 (citing N.J. Stat. Ann. §§ 18A:3B-27, :64-6(a), (k)).

[36] Section 18A:3B-6 was amended in 2017 only to include a reference to the legislation elevating Montclair from a state college to a public university. 2017 N.J. Laws 178, sec. 37. The substance of § 18A:3B-6 was otherwise unchanged.

[37] *Maliandi*, 845 F.3d at 98 (citing N.J. Stat. Ann. § 18A:3B-27).

[38] *Id.* (citing N.J. Stat. Ann. §§ 18A:64-3, -5).

[39] *Id.* at 97 (citing N.J. Stat. Ann. § 18A:64-3).

[40] *Id.* (citing N.J. Stat. Ann. § 18A:64-21.1)

10

retirement programs."[41]  Montclair was also subject to the state's administrative procedure, state contract, and civil service laws.[42]  Those same statutory requirements apply to Ramapo, compelling the conclusion that it is not autonomous from the state.

Because two of the three co-equal *Fitchik* factors tip in favor of finding that Ramapo is an arm of the state, it is entitled to sovereign immunity, as are its officers in their official capacities.  Thus, we reverse the District Court's denial of the Motion to Dismiss with respect to both Counts VII and VIII against Ramapo and its officers in their official capacities.

### B.      Qualified Immunity for Jones's State-Created Danger Claim

Next, Ramapo's officers in their individual capacities argue that they are entitled to qualified immunity.  A state official sued in his or her individual capacity is entitled to qualified immunity from suit unless (1) "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[43]  A right may be clearly established even if there is no "previous precedent directly in point"; the ultimate inquiry is whether "a reasonable official would have known that the conduct was unlawful."[44]

The officers' principle argument is that Jones has failed to plead a claim for state-created danger because a state-created danger cannot be premised on the state's mere

---

[41] *Id.* (citing N.J. Stat. Ann. §§ 18A:3B-14, -15).

[42] *Id.* at 98 (citing N.J. Stat. Ann. §§ 18A:3B-6(f), :64-6(h), (k), (w), (x), :64-52 to -93).

[43] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)).

[44] *Leveto v. Lapina*, 258 F.3d 156, 162 (3d Cir. 2001) (quoting *Good v. Dauphin County Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989)).

failure to act. We agree. Because Jones has failed to plead a claim for a state-created danger, we do not reach the officers' argument regarding *Iqbal*.

We conclude that the officers are entitled qualified immunity because Jones has failed to state a claim for a state-created danger in Count VIII of the Complaint. To state a claim for state-created danger, the plaintiff must allege: (1) "the harm ultimately caused was foreseeable and fairly direct," (2) "a state actor acted with a degree of culpability that shocks the conscience," (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts," and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."[45]

Jones fails to allege that Ramapo employees "affirmatively used" their authority. Specifically, her portrayal of Ramapo's employees as affirmatively "allow[ing]" the perpetration of her rape is unavailing.[46] In *Morrow v. Balaski*, we rejected "attempts to morph passive inaction into affirmative acts."[47] In *Morrow*, the Court, sitting *en banc*, concluded that a high school's readmission of a student suspended for assaulting students Brittany and Emily Morrow did not constitute a state-created danger, despite the fact the student again assaulted the Morrow children after her readmission.[48] In reaching that conclusion, we stated, "[W]e fail to see how the suspension created a new danger for the

---

[45] *L.R.* v. *Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (citing *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006)).
[46] *See also* Appellee Br. at 25-28.
[47] *Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013) (rejecting appellants' "attempts to morph passive inaction into affirmative acts").
[48] *Id.* at 164, 178.

Morrow children or 'rendered [them] more vulnerable to danger than had the state not acted at all.'"[49] Similarly, Jones was not placed in *more* danger by Ramapo employees. At the moments that she may have come into contact with Ramapo's employees, she was already in the custody of her assailant. At most, Jones has alleged that Ramapo employees should have done more to protect her from a private actor, which is outside the scope of the state-created danger doctrine.[50]

In reaching that conclusion, we are not unsympathetic to the suffering that Jones endured, nor to the tragedy that the events as alleged could have been prevented. Our holding reflects merely that, while other means, including state tort claims and criminal proceedings, are available to punish wrongdoers, the state-created danger doctrine does not reach failures to intervene. We therefore will reverse the District Court with respect to the officers' qualified immunity for Jones's claim for state-created danger in Count VIII of the Complaint.

The officers next argue that they are entitled to qualified immunity because it was no longer clearly established following the Supreme Court's decision in *Ashcroft v. Iqbal* that supervisory liability may be imposed for an official's "knowledge and acquiescence" in a subordinate's creation of a state-created danger.[51] The imposition of supervisory liability is critical to Jones's claims against the officers because she does not allege that

---

[49] *Id.* at 178 (alteration in original) (quoting *Bright*, 443 F.3d at 281).
[50] *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Jones's reliance on our decision in *L.R. v. School District of Philadelphia* is similarly unavailing, because she has failed to allege a change in her status quo caused by a state actor, as required by that decision. *L.R.*, 836 F.3d at 243.
[51] Reply Br. at 7-8.

13

they personally participated in her harm, but rather caused her injuries through their "knowledge and acquiescence" in and "deliberate indifference" to the harms she faced.[52]

We have held that supervisory liability may be imposed on a defendant for the conduct of his or her subordinates if the defendant (1) is a "policymaker[]" who "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm,"[53] or (2) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[54] In *Iqbal*, however, the Supreme Court concluded that supervisory liability could not be imposed on supervisory officials in a discrimination claim for their "mere" "knowledge and acquiescence in their subordinates' discriminatory purpose."[55] Instead, the plaintiff must plead that the officials "adopted and implemented the . . . policies at issue" with the same discriminatory "purpose" as their subordinates.[56] Based on *Iqbal*, we altered our standard for supervisory liability, at least for Eighth Amendment claims, concluding that "the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged."[57]

---

[52] *E.g.*, A34, A49, A50-51, A69-72; *see* Appellee Br. at 20-21.
[53] *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).
[54] *A.M.*, 372 F.3d at 586 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).
[55] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)
[56] *Id.*
[57] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042, 2045 (2015).

14

Based on *Iqbal*, the officers contend that the "'knowledge and acquiescence' theory of supervisory liability" is no longer viable.[58]  The officers, however, expressly limit their argument to "the context of a Fourteenth Amendment state-created danger claim."[59]  Because the officers are entitled to qualified immunity on Jones's claim for a state-created danger,[60] we do not reach the issue with respect to *Iqbal*.

**D.** **The Officers Have Waived a Challenge to Jones's Claim for Deliberate Indifference**

Finally, Jones contends that the officers in their individual capacities have waived any argument regarding her claim for deliberate indifference in Count VII of her Complaint.[61]  We agree.  Appellants "are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief . . . . [I]f an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals."[62]

The officers have failed to raise any arguments regarding Count VII in their opening brief.  Instead they address only Jones's state-created danger claims[63] and limit their arguments regarding *Iqbal* to "the context of a Fourteenth Amendment state-created

---

[58] Reply Br. at 7.
[59] Appellants Br. at 47-48; *accord* Reply at 8.
[60] *See supra* Section III.B.
[61] Appellee Br. at 15.
[62] *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).
[63] Appellant Br. at 31.

danger claim,"[64] failing entirely to address Jones's deliberate indifference claim against the officials.

Nonetheless, the officers contend that "[s]ince the Ramapo Defendants are entitled sovereign immunity as an arm of the state, and to qualified immunity[,] Count VII along with all other § 1983 claims must be dismissed."[65] We disagree. Although sovereign immunity protects the officers in their official capacities with respect to both Counts VII and VIII, qualified immunity shields them in their individual capacities only with respect to Count VIII, because Jones has failed to plead only a state-created danger. A claim for deliberate indifference, however, is an "independent basis for liability," premised on a distinct set of elements from a state-created danger claim.[66] The officers fail to address any of those elements and have consequently waived that issue.

## IV. Conclusion

For the foregoing we reasons, we reverse the Order of the District Court with respect to Counts VII and VIII of Jane Jones's Complaint against Ramapo College of New Jersey and its officers in their official capacities and with respect to Count VIII against the officers in their individual capacities. We affirm in all other respects.

---

[64] Appellants Br. at 47-48; *accord* Reply at 8.
[65] Reply Br. at 4.
[66] *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989); *cf. Fagan v. City of Vineland*, 22 F.3d 1283, 1292-93 (3d Cir. 1994).

16